THE UNITED STATES OF AMERICA, for the use and benefit of LEWERS & COOKE, LIMITED, a Corporation, *vs.* BURRELL CONSTRUCTION COMPANY, a Corporation, and THE AETNA INDEMNITY COMPANY, OF HARTFORD, CONNECTICUT, a Corporation.

## November 23, 1908.

*Practice under statute for protection of persons furnishing materials and labor for public works:* In proceedings by materialmen under the legislation "for the protection of public works," (33 Stat. L. part 1, p. 811), it is not necessary that the complaints shall state the names of other creditors than the plaintiffs.

*Construction of the statute in relation to the bond prescribed:* The bond prescribed by such legislation is two-fold; first, protecting the United States against breaches of the contract, and second, guaranteeing to third parties furnishing materials and labor for performance of such contract, payment of their bills therefor. Much of the law applying to ordinary bonds does not apply to such bond.

*Practice—Status of materialmen under a modification of the contract:* In proceedings by materialmen under such legislation, after the required bond is executed and delivered to the United States, the latter is no longer the representative of the parties who may furnish materials, &c., and they are not prejudiced by its action in agreeing or consenting to a modification of the contract.

*Same—Status of materialmen causing a delay in the performance or other modification of the contract:* Guarantee of such bond as to materialmen as affected by their conduct causing a delay in the performance or other modification of the contract, *quaere.*

*Same—Notice to surety on bond of modification of contract:* Notice to surety on bond of modification of contract not required by the statute.

*Same—Failure to attach bills of particulars to complaints:* Failure to attach bills of particulars to such complaints, not material.

*At Law*:    Demurrer to petition.

*Thompson & Clemons,* for the Demurrer.
*Smith & Lewis, W. W. Thayer* and *H. G. Middleditch,*
Contra.

Dole, J.   Besides the original petition by Lewers & Cooke, Limited, there are eight petitioners intervening in this case. The Aetna Indemnity Company has demurred to the petitions as follows:

1.    That the said complaint does not in any of the separate causes of action therein set forth state facts sufficient to constitute a cause of action.

2.    That it does not appear that the parties therein named executed the contract of June 20, 1905, Exhibit A of said complaint, or complaints.

3.    That it appears that the contract finally performed by the defendant, Burrell Construction Company, was not a contract respecting which demurring defendant agreed to be surety or guarantor.

4.    That there is no showing who are the creditors of defendant, Burrell Construction Company, other than the plaintiffs, if any, known to the plaintiffs.

5.    That there is annexed to the said complaint none of the vouchers upon which the various causes of action therein set forth are predicated.

6.    That the said complaint is duplicitous or double, in this, that it appears in and by said complaint that this defendant agreed to an extension of time for the completion of the contract therein mentioned to February 27, 1907, whereas the plaintiffs claim for goods sold and delivered at some time on or before May 9th and 15th, 1907, respectively.

7.    That it appears in said complaint that this defendant's liability, if any, in the premises was limited to a contract of the principal Burrell Construction Company to be completed by February 27, 1907, whereas the complaint is founded on

claims for goods sold and delivered for use in a contract completed long thereafter or on or about May 31, 1907.

8. That the said complaint is indefinite and uncertain in this, that this defendant's responsibility if any was limited to a contract of the Burrell Construction Company, to be completed by February 27, 1907, whereas the complaint is founded on claims for goods sold and delivered at some indefinite time before May 31, 1907.

The second ground of demurrer, that it does not appear that the parties named in the petitions, referring to the United States of America and the Burrell Construction Company, executed the contract of June 20, 1905, which contract is set forth as Exhibit A of the complaint, is made to all the petitions, except that of Robert Dalziel, Jr. This ground of demurrer is overruled, as the petitions allege that the Burrell Construction Company made and entered into a written contract with Colonel Wm. S. Patten, Assistant Quartermaster General, United States Army, for and on behalf of the United States, which contract is fully described in the petitions, it being also alleged that such contract was completed by the said Burrell Construction Company and final settlement thereof made by the United States of America at the office of the Quartermaster General of the United States Army, Department of War, Washington, D.C., on or about May 31, 1907. All of the petitions contain this allegation except that of Robert Dalziel, Jr., who alleges the making of the contract and its completion and settlement on March 28, 1908.

The fourth ground of demurrer is that there is no showing who are the creditors of defendant, Burrell Construction Company, other than the plaintiffs, if any, known to the plaintiffs. There is no provision of law requiring a showing who are the other creditors than those appearing. The requirement of the statute that notice of the pendency of proceedings be given to known creditors and that publication of such notice be made, has been carried out, as shown by affidavit of A. Lewis, Jr.,

Document No. 8, pursuant to order of court, Document No. 3.

The sixth, seventh and eighth grounds of demurrer relating to the petitions of Lewers & Cooke, Limited, the Bank of Hawaii, Limited, and Robert Dalziel, Jr., demur to such petitions on the ground that the claims of such petitioners include goods sold and delivered and labor performed between February 27, 1907, the date when the agreement between the Burrrell Construction Company and the United States should have been completed in accordance therewith, and May 31, 1907, claiming that goods furnished · after the time when the contract should have been completed, according to the agreement, are outside of the contract, inasmuch as the contractor agreed to complete his work at a certain date and the surety guaranteed the subcontractors as to such agreement and nothing more.

The third ground of demurrer is made to all the petitions and covers the same ground in a general way as the sixth, seventh and eighth grounds, as follows: That it appears that the contract finally performed by the defendant Burrell Construction Company, was not a contract respecting which demurring defendant agreed to be surety or guarantor. This appears to be based on the contention that the contract performed was a different contract from the original one because of its completion at a later time than the date agreed on.

All of the petitioners, except Lewers & Cooke, Limited, the Bank of Hawaii, Limited, and Robert Dalziel, Jr., allege delivery of goods and the furnishing of labor, where labor is· alleged to be furnished, at times previous to the 27th day of February, 1907, except Lucas Bros., who allege the furnishing of goods between September 1, 1905, and about February 28, 1907, the alleged time for the completion of the contract.

Such delay in the completion of a contract might render the contractor liable on his bond, but the nature of a bond of this kind is such that it essentially forms two bonds, one in favor of the government and the other for the protection of third parties from whom the contractor may procure materials or labor. It covenants that such persons shall be paid for what-

ever materials or labor they may supply to enable the principal to execute his contracts with the United States. There was no modification of the agreement by the contractor and the government except one or two extensions of time, which reached to February 28, 1907; but the work contracted for was not completed until some time after that date but before May 31, 1907, at which time final settlement was made between the United States and the contractor. Here was no variance of the contract except an extension of the work beyond the time agreed upon in writing, and although there was no further extension of the time in writing, yet, as it does not appear that the delay in the completion of the contract after February 28, 1907, was contested by the United States, it may be assumed from the fact of its prompt final settlement thereof on or about May 31, 1907, that such extension was assented to by the United States; which conclusion brings the extension within the terms of the bond, which continues the obligations of the contract "as well during any period of extension of said contract that may be granted on the part of the United States as during the original terms of the same." If this conclusion is incorrect, we have the proposition of the defense to consider;—that the contractor may by procrastination or unavoidable delay forfeit the rights of the third parties,—his creditors, without their knowledge or consent, which conduct is beyond their control; or that the contractor and the United States, on the theory that such delay was assented to by the latter, may have been able to defeat the rights of the third parties by orally agreeing to an extension of the time for completion of the contract, without the consent of such third parties. It is a strange theory of both law and justice, that persons may be legally deprived of their vested rights independently of their own action or that of any representative.

There is no material difference as to the legal status of the sub-contractor whose goods and labor were furnished previous to February 28, 1907, and those whose goods and labor were furnished after that time. The court cannot infer that in the latter case the sub-contractors were responsible for the delay.

The paramount element of the case is not that the goods were furnished after the time agreed upon for the completion of the contract, but that they were furnished in good faith for the work contracted for, according to the agreements between such sub-contractors and the contractor.

Counsel for defense say in their brief, referring to the said delay in performance, "there is not one word in the complaints with regard to notice of this extension of time of performance * * * so as to be in a position to protect itself if need be." Neither do the complaints contain allegations that the surety had notice of the extensions by written agreement. There is nothing in the statute, contract or bond requiring such notice. The bond in contemplation is in a class differing from the ordinary bond as, for instance, the bail bond in *Reese v. United States,* 76 U. S. 13, cited by defendant's counsel, and much of the law applying to the ordinary bond does not apply to it.

The case of *United States v. National Surety Co.,* 92 Fed. Rep. 549, 552, in the Circuit Court of Appeals, Eighth Circuit, lays down the rule that "when the government has executed the contract and taken and approved the bond, it ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons under the bond are unaffected by subsequent transactions between the government and the contractor." In that case, after the bond was executed, the government and the contractor entered into a further agreement modifying the specifications of the original contract, and it was held that the sureties could not claim exemption on that ground.

The Circuit Court of the Eastern District of Pennsylvania, in the case of *United States v. California Bridge & Construction Co.,* 152 Fed. Rep. 559, supported the law in *United States v. National Surety Co.,* supra, in a case in which the materials were received by the contractor, inspected and accepted by the government and afterward used upon another site by another contractor. The surety was held liable, the court saying, "This

company has fulfilled its subcontract to furnish material for the prosecution of the work, and, in my opinion, the surety has not even a technical defense to the claim.

In the case of *Guaranty Co. v. Pressed Brick Co.,* 191 U. S. 425, 426, the court held the surety liable for notes received by the third parties from the contractor for payment of their claims, such notes being for reasonable periods, saying that "if a person deliberately contracts for an uncertain liability he ought not to complain when that uncertainty becomes certain." The court said further:

" The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of the sub-contractor, with a view of furthering the beneficent object of the statute. Of course, this rule would not extend to cases of fraud or unfair dealing on the part of a subcontractor, as was the case in *United States v. American Bonding & Trust Co.,* 89 Fed. Rep. 921, 925, or to cases not otherwise within the scope of the undertaking."

The case of *United States v. American Bonding & Trust Co.,* 89 Fed. Rep. 921, cited in support of the demurrer is not applicable to the facts in this case. The third parties, creditors of the contractor, applied the payments of the contractor to their account between him and them not connected with such contract, and took notes for the accounts accrued for goods furnished in relation to the contract, and the court ruled justly that the moneys received from the contractor should have been applied first to their claims against him on account of the work relating to the contract in question.

The third, sixth, seventh and eighth grounds of the demurrer are overruled both as to the claims based upon goods and labor furnished before February 28, 1907, and those furnished after

that time as well, the rule referred to applying equally to both classes of claims.

The fifth ground of demurrer to the effect that no vouchers upon which the causes of action were predicated are filed, is overruled. Some of the petitioners have annexed bills of particulars to their complaints; all have asked leave to file itemized statements. A motion for bills of particulars was made by counsel for defendants and hearing set for June 8, 1908, at which time, none of the parties being present, the case was continued until called up by counsel.

The first ground of demurrer which is general in character is covered by the conclusions reached above and is therefore overruled.